ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

NOV - 3 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

UNITED STATES OF AMERICA          :
                                  :     CRIMINAL INDICTMENT
            v.                    :
                                  :     NO. 2:11-CR-44
FREDERICK W. THOMAS               :
EMORY DAN ROBERTS                 :
SAMUEL J. CRUMP                   :
RAY H. ADAMS                      :
                                  :

THE GRAND JURY CHARGES THAT:

## COUNT ONE

**(Conspiracy to Possess an Unregistered Explosive Device)**

### The Conspiracy

1.   Beginning on a date unknown to the Grand Jury, but at
least as of March 17, 2011, and continuing until November 1, 2011,
in the Northern District of Georgia and elsewhere, the defendants,
FREDERICK W. THOMAS and EMORY DAN ROBERTS, did combine, conspire,
confederate, agree and have a tacit understanding with each other,
and others known and unknown to the Grand Jury, to commit the
following offenses:

A.   To knowingly receive and possess a firearm, specifically,
a destructive device not registered to them in the National
Firearms Registration and Transfer Record in violation of Title 26,
United States Code, Sections 5861(d) and 5871; and

B.   To knowingly receive and possess a firearm, specifically,
a silencer not registered to them in the National Firearms
Registration and Transfer Record in violation of Title 26, United

States Code, Sections 5861(d) and 5871.

Background

2.    It is relevant to the conspiracy that:

3.    Throughout the time period alleged in the Indictment, defendants THOMAS and ROBERTS conducted meetings with others known and unknown to the grand jury to discuss the formation of a covert militia group and to plan, among other activities, armed attacks on government buildings and federal government employees, including law enforcement agents.

4.    During the meetings, the defendants and others known and unknown to the grand jury discussed their willingness to advance the militia group's objectives by assassinating others by various means including the use of toxic agents.

5.    Throughout the time period alleged in the Indictment, defendants THOMAS and ROBERTS sought to obtain destructive devices and firearms silencers in furtherance of their plans to attack federal officials and federal law enforcement agencies.

Overt Acts

6.    In furtherance of the conspiracy, and in order to effect the purposes and objects thereof, defendants THOMAS and ROBERTS, and others known and unknown to the grand jury, committed overt acts in the Northern District of Georgia and elsewhere, including but not limited to the following:

7.    On or about March 17, 2011, defendant THOMAS discussed with defendant ROBERTS, and others known and unknown to the grand

2

jury, the covert militia group's need to obtain silencers that are not registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

8.   On or about April 3, 2011, defendants THOMAS and ROBERTS, and others known and unknown to the grand jury, discussed methods and means of acquiring ammunition and equipment, particularly silencers for firearms.  Defendant THOMAS suggested that they buy, steal or make the silencers, or obtain them by attacking a silencer manufacturer's truck.

9.   On or about May 30, 2011, defendant THOMAS prepared a list of weapons including destructive devices and silencers, that he provided to an individual known to the grand jury, who defendant THOMAS believed would assist him in obtaining them.

10.   On or about June 9, 2011, defendants THOMAS and ROBERTS met with an individual known to the grand jury, who the defendants believed to be a dealer of unregistered silencers and destructive devices, and agreed to purchase silencers and explosives from him.

11.   On or about July 13, 2011, defendant THOMAS told a person known to the grand jury, who defendant THOMAS believed to be a dealer of unregistered silencers and destructive devices, that defendants remained interested in purchasing handgun and rifle silencers.

12.   On July 18, 2011, defendant THOMAS discussed bartering property in exchange for silencers and explosives with an individual known to the grand jury, who defendant THOMAS believed

to be a dealer of unregistered silencers and destructive devices.

13.  On or about August 1, 2011, defendants THOMAS and ROBERTS met with a person known to the grand jury to discuss acquiring Trinitrotoluene (TNT), to make their own destructive devices.

14.  On or about August 20, 2011, defendants THOMAS and ROBERTS met with a person known to the grand jury to discuss purchasing silencers and making claymore mines.

15.  On or about September 20, 2011, defendant THOMAS met with an individual purporting to be a dealer of unregistered silencers and explosives and agreed to purchase a silencer for a rifle and conversion parts (to make a rifle fully automatic) in exchange for a firearm.  Defendant THOMAS also agreed to purchase a destructive device for $1000.00 in United States currency.

16.  On or about October 15, 2011, defendants THOMAS and ROBERTS and an individual known to the grand jury met and discussed the purchase of the explosives and defendant ROBERTS' portion of the purchase price.

17.  On or about November 1, 2011, defendants THOMAS and ROBERTS met with a person known to the grand jury, gave that person a sum of United States currency and a firearm, and took possession of a silencer and what they believed were explosives.

18.  On or about November 1, 2011, defendant Thomas had in his possession written instructions for detonating a destructive device.

All in violation of Title 18, United States Code Section, 371.

4

COUNT TWO
**(Possession of an Unregistered Silencer)**

19.  The allegations in paragraphs 2 through 18 of this Indictment are re-alleged and incorporated by reference as though set forth fully herein.

20.  On or about November 1, 2011, within the Northern District of Georgia, the defendants, FREDERICK W. THOMAS and EMORY DAN ROBERTS, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly possessed a firearm, that is: a silencer which was not registered to them in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5845(a)(7), 5861(d) and Title 18, United States Code, Section 2.

COUNT THREE
**(Conspiracy to Possess and Produce a Biological Toxin)**

21.  The allegations in paragraphs 2 through 5 of this Indictment are re-alleged and incorporated by reference as though set forth fully herein.

22.  Beginning on a date unknown to the Grand Jury, but at least as of September 17, 2011, and continuing until November 1, 2011, in the Northern District of Georgia and elsewhere, the defendants, SAMUEL J. CRUMP and RAY H. ADAMS, did combine, conspire, confederate, agree and have a tacit understanding with each other, and others known and unknown to the Grand Jury, to knowingly develop, produce, and possess a biological agent and toxin, that is, ricin, for use as a weapon, in violation of Title 18, United States Code, Section 175(a).

Background

23.   It is relevant to the conspiracy that:

24.   Throughout the time period alleged in the Indictment, defendants CRUMP and ADAMS attended several of the meetings conducted by defendants Fredrick W. Thomas and Emory Dan Roberts as described in Count One of this Indictment.

25.   Ricin, as used in this Indictment, refers to a highly toxic, naturally occurring protein derived from the castor oil plant Ricinus communis.

Overt Acts

26.   In furtherance of the conspiracy, and in order to effect the purposes and objects thereof, defendants CRUMP and ADAMS and others known and unknown to the grand jury, committed overt acts in the Northern District of Georgia and elsewhere, including but not limited to the following:

27.   On or about September 17, 2011, defendant CRUMP and others known and unknown to the grand jury discussed defendant CRUMP's plan to produce ten pounds of ricin and disperse the ricin in several cities in the United States.   Defendant CRUMP stated that defendant ADAMS would make the ricin.

28.   On or about October 6, 2011, defendant CRUMP met with an individual known to the grand jury and discussed his plans for making ricin, including discussing the ingredients and process for making ricin from castor beans.

29.   On or about October 15, 2011, defendants CRUMP, ADAMS and others known and unknown to the grand jury attended a meeting at

defendant ADAMS' residence during which defendant ADAMS removed a castor bean from a bin in a storage shed containing other castor beans on defendant ADAMS' property and gave the castor bean to defendant CRUMP.   Defendant CRUMP gave the castor bean to an individual known to the grand jury.

30.   On or about October 29, 2011, defendant CRUMP told an individual known to the grand jury that lye was the final ingredient he needed to obtain for the production of ricin and discussed his plan to purchase lye.

31.   On or about October 29, 2011, defendant ADAMS discussed with an individual known to the grand jury the production of ricin and stated that he needed about one pound of lye to produce ricin.

32.   On or about October 29, 2011, an individual known to the grand jury observed a recipe for making ricin in ADAMS' residence.

33. On or about October 29, 2011, defendant Crump told a person known to the grand jury that he had a quantity of castor beans at his residence and that he would begin the process of removing the castor beans' shells.

COUNT FOUR

(Attempted Production of a Biological Toxin)

34.   The allegations in paragraphs 2 through 5, and 22 through 33 of this Indictment are re-alleged and incorporated by reference as though set forth fully herein.

35.   Beginning on a date unknown to the Grand Jury, but at least as of September 17, 2011, and continuing until November 1, 2011, in the Northern District of Georgia and elsewhere, the

7

defendants, SAMUEL J. CRUMP and RAY H. ADAMS, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly attempt to develop, produce, and possess a biological agent and toxin, that is, ricin, for use as a weapon, in violation of Title 18, United States Code, Section 175(a) and Section 2.

A _____ True _____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

JEFFREY A. BROWN
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 088131
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000
404/581-6181 (FAX)

8